UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**RENEE S.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:21-cv-00909-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on June 29, 2021, denied Plaintiff's application for disability insurance benefits. Plaintiff has now moved for judgment on the pleadings (Doc. 6) and the Commissioner has filed a similar motion (Doc. 8). For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## I. BACKGROUND

    Plaintiff filed her application for benefits on September 26, 2019, alleging that she became disabled on July 3, 2018. After initial administrative denials of that claim, a hearing was held before an Administrative Law Judge on September 24, 2020. Plaintiff and a vocational expert, Danielle Hetu, testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on October 22, 2020. He first found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023, and that she had not engaged in substantial gainful activity since her alleged onset date. Next, he concluded that Plaintiff suffered from severe impairments including rheumatoid arthritis and osteoarthritis. However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the Listing of Impairments.

    Moving forward with the sequential evaluation process, the ALJ then concluded that Plaintiff had the ability to perform light work except that she could occasionally perform all postural maneuvers with the exception of never climbing ropes, ladders, and scaffolds. Also, she could occasionally handle bilaterally and had to avoid concentrated exposure to extreme cold.

    The ALJ further concluded that Plaintiff could not perform her past relevant work as a

licensed practical nurse. However, relying on the vocational expert's testimony, the ALJ determined that, given her vocational profile and with the limitations described above, Plaintiff could perform certain sedentary or light jobs such as director, nurses' registry, cardiac monitor, and gate guard. He also found that these jobs existed in significant numbers in the national economy. As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, raises this claim of error: "Did the ALJ properly evaluate Plaintiff's subjective complaints of pain?" *See* Plaintiff's memorandum, Doc. 6-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 44 years old at the time of the administrative hearing, first testified that she had a degree as an LPN but had not worked since July of 2018. She said she had to stop working due to rheumatoid arthritis and osteoarthritis, which conditions caused pain, severe fatigue, and muscle soreness and weakness. Both her sitting and standing were limited to minutes at a time and her fine motor skills were impaired. On a typical day, she lay on her couch most of the time. She did help her son and grandson get off to school in the morning and did some chores like dishes and feeding the cats and dogs. She left her house only to go grocery shopping or for medical appointments.

Plaintiff further testified that she experienced constant swelling in her knees, elbows, and hands. Her pain was also constant but it varied in intensity throughout the day. She also had back pain which affected her ability to bend and to sit. She could not type and had trouble gripping objects. She could not perform twisting motions with her arms or repetitive arm motions, and looking down was uncomfortable as well. Plaintiff said she had lost a lot of strength and could not lift much weight. Finally, she testified that her memory and concentration were affected by her pain and she lacked the energy to socialize.

The vocational expert, Ms. Hetu, first classified Plaintiff's past work as a licensed practical nurse as medium in exertional level and with an SVP of 6. She was then asked questions about a hypothetical person who could do light work but perform postural maneuvers only occasionally, who could not climb ladders, ropes, or scaffolds, who could only handle bilaterally, and who had to avoid concentrated exposure to extreme cold. She said that such a person could not do Plaintiff's past relevant work, but could do jobs like director, nurse registry, cardiac monitor, and gate guard. The first two jobs could be performed at the sedentary exertional level and the third was light. She also gave numbers for those jobs as they exist in the national economy. In response to questions from Plaintiff's counsel, Ms. Hetu testified that the first two jobs also required occasional fingering, but the gate guard job did not involve that activity. If the person could only reach in front of her occasionally or occasionally look down or turn her head to the right or to the left, it would affect her ability to do those jobs.

### B. Treatment Records

The pertinent medical treatment records show the following. On January 19, 2018, while she was still working, Plaintiff was seen for achiness in her knees. On examination, she had no difficulty rising from a seated position and did not need an assistive device when walking. Both knees were slightly swollen, however. Arrangements were made for an MRI to be done. A month later, her knees appeared normal. The results of the MRI showed some primary osteoarthritis in the right knee. Plaintiff declined an injection at that time. By then, she had also been diagnosed with rheumatoid arthritis, and a study done a month later showed some arthritis in her hands. In April, she reported great improvement with CBD oil. By October (when she was no longer working), Plaintiff told her doctor that she had increasing arthralgias as well as an element of fatigue and she needed help from her family when doing household chores.

Treatment notes from 2019 show that in March, Plaintiff's physical examination was positive for limited range of motion in her neck and knees as well as swelling in her hands, and the following month she reported weakened grip strength. Plaintiff was continuing to receive conservative treatment for rheumatoid arthritis throughout the year. At an appointment in October of that year, she reported she could do activities of daily living at her own pace, and a physical exam revealed swelling and tenderness in some of her joints as well as limited range of motion in her hands, neck, back, and shoulders. An x-ray taken at that time showed mild osteopenia in the hands, and an ultrasound showed mild synovial hypertrophy, which was described as an improvement over a prior study. At a December appointment, Plaintiff did not report any body aches, decreased energy, or fatigue. Three months later, she was still doing fairly well apart from some knee pain, and had no swelling, weakness, or neck and back pain, but she did have some stiffness and arthralgias as well as some fatigue. She appeared to be doing well when seen again in July, 2020.

A state agency physician, Dr. Sinha, reviewed the records through November 7, 2019, and concluded that Plaintiff could do light work with various postural limitations, had limitations in both hands for gross manipulation, and had to avoid concentrated exposure to extreme cold. (Tr. 71-74). On January 16, 2020, a second state agency physician, Dr. Koenig, confirmed these conclusions. (Tr. 83-86).

### C. Opinion Evidence

Dr. Liu, a consultative examiner, performed an internal medicine examination on November 4, 2019. Plaintiff told him she had been diagnosed with both rheumatoid arthritis and osteoarthritis in 2010 and that she suffered from whole body pain exacerbated by exercise and cold weather. She also said she could walk ten blocks, sit for 15 minutes before changing positions, and lift ten pounds. Her back pain radiated into both legs and her neck pain radiated into both shoulders. Other symptoms included numbness and tingling in her hands and toes. On examination, her gait was normal and she could walk on her heels and toes, although with moderate difficulty. She rose from a chair without difficulty. Plaintiff demonstrated limited

range of motion in her spine and straight raising was positive. There were no strength or sensory deficits and she demonstrated intact hand and finger dexterity and normal grip strength. Dr. Liu thought she had mild to moderate limitations for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, sitting, standing, and stair climbing. (Tr. 385-89).

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV. DISCUSSION

In arguing her sole claim of error, Plaintiff asserts that the bulk of the ALJ's reasoning in discounting her subjective complaints rested on a selective interpretation of the record concerning her activities of daily living. She notes that the ALJ used generalized and largely discredited boilerplate language in his decision and also wrongly interpreted her testimony about her activities of daily living as supportive of his conclusions when, in fact, it was just the opposite. She also argues that the ALJ improperly used her ability to do limited child care as evidence that she could work full-time. The Commissioner responds that the ALJ properly determined that Plaintiff's description of her symptoms was inconsistent with the medical

evidence of record, including both the treatment notes and the opinion evidence.

The ALJ analyzed Plaintiff's subjective complaints in this fashion. After correctly reciting the legal standard pertaining to the evaluation of a claimant's testimony concerning symptoms, the ALJ summarized Plaintiff's testimony and the relevant treatment records. He then determined that Plaintiff's description of extremely limited daily activities did not support her claim because, first, her daily activities could not be verified, and second, because there might be other reasons for such limitations. (Tr. 29). He viewed the medical evidence as "relatively weak" and said that it supported her ability to do activities of daily living, albeit with help from family members and at her own pace. He noted that strength testing was consistently normal and that although she claimed to be fatigued, "she [was] consistently described as alert and oriented at medial examinations." *Id*. The ALJ also noted that she cared for her minor grandson, which, he said, "can be quite demanding both physically and emotionally." *Id*. Lastly, he relied on the fact that she declined steroid injections and underwent only routine and conservative treatment. *Id*. That analysis, plus finding the opinions of the state agency physicians persuasive (and the opinion of Dr. Liu somewhat persuasive), led the ALJ to conclude that Plaintiff could do light work with restrictions. (Tr. 30).

The Court's review of an ALJ's decision to discount the subjective complaints of a claimant is somewhat circumscribed. As the Court of Appeals has said about the law governing the ALJ's decision-making process,

> "The regulations provide a two-step process for evaluating a claimant's assertions of pain." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id*. Second, the ALJ must consider 'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id*. (*quoting* 20 C.F.R. § 404.1529(a)) (alteration removed).

*Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021). In reviewing the ALJ's decision on this issue, however, the Court owes that decision a level of deference. In *Garcia v. Acting Comm'r of Soc. Sec.*, 2023 WL 4174181, at *10 (S.D.N.Y. June 23, 2023), this Court observed that

> [a]n ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court. *Osorio v. Barnhart*, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006). "[A]s with any finding of fact, '[i]f the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.' " *Id*. (quoting *Aponte v. Sec'y of Health and Hum. Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Still, an ALJ's finding of credibility "must ... be set forth with sufficient specificity to permit intelligible plenary review of the record." *Pena [v. Astrue*, 2008 WL 5111317, at *10 [(S.D.N.Y. Dec. 3, 2008)](internal quotation marks

omitted) (quoting *Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.' " *Id*. (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984))

Applying these principles to this case, Plaintiff is correct that much of the ALJ's analysis of her subjective testimony lacks support in the record. Plaintiff's testimony concerning her child care responsibilities and her activities of daily living do not translate into the ability to work on a full-time basis, let alone at the light exertional level. Her description of the latter - that she can do them at her own pace - remained consistent throughout the medical record, and the former activities were limited to getting the children off to school in the morning. The ALJ's comment that child care responsibilities "can be quite demanding" simply mischaracterizes Plaintiff's explanation of how she carried out those responsibilities. It is also important to note that the ALJ's comments that Plaintiff's daily activities limitations could not be verified is not a correct statement of the applicable legal standard, and his assertion that there might be other reasons for those limitations is, on this record, pure speculation. Finally, as one court has observed, "[i]t is well-settled that a claimant 'need not be an invalid to be found disabled' and should not be punished for exerting the effort to attend to basic necessities of life." *Mark V. v. Comm'r of Soc. Sec.*, 2023 WL 2662678, at *8 (S.D.N.Y. Mar. 27, 2023).

The ALJ also interpreted the medical records showing that Plaintiff was alert and oriented at medical examinations to mean that she did not suffer from fatigue, but there is little logical connection between the two, especially in light of medical records indicating that she suffered from rheumatoid arthritis and that her fatigue was worsened by exertion. Additionally, the fact that she received conservative treatment, which is to be expected for someone suffering from rheumatoid arthritis, is not, given the nature of her impairments, supportive of a finding that her complaints were not as serious as she alleged. It is not apparent on this record that other treatment modalities would have been any more effective in controlling the symptoms caused by that condition. *Cf. Outour v. Saul*, No. 2020 WL 1663358, at *28 (D.S.D. Apr. 3, 2020) *(*"The ALJ stated she had relied primarily on conservative methodologies, but the ALJ did not indicate that any physician had recommended or prescribed a more aggressive medical or surgical procedure which would have been more effective to treat her pain"). While the injections she declined might have helped with her osteoarthritis, there is nothing to indicate that they would have alleviated the symptoms of her rheumatoid arthritis, especially since the injections would have only targeted her knees. The ALJ's interpretation of the medical evidence as conflicting with Plaintiff's testimony is, for the most part, unsupported by the record.

All in all, the Court, although mindful of the deference owed to the ALJ's credibility determination, finds that in this case his determination is not supported by substantial evidence. Because the credibility determination, in turn, had an impact on the way the ALJ evaluated the medical evidence, a remand is required. *See Genier v. Astrue*,

606 F.3d 46, 50 (2d Cir. 2010) ("[b]ecause the ALJ's adverse credibility finding, which was crucial to his rejection of Genier's claim, was based on a misreading of the evidence, it did not comply with the ALJ's obligation to consider 'all of the relevant medical and other evidence,' 20 C.F.R. § 404.1545(a)(3), and cannot stand").

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 6), **DENIES** the Commissioner's motion (Doc. 8), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

                                               **/s/ Terence P. Kemp**
                                               **United States Magistrate Judge**